**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BLACK CREEK CONTRACTORS, L.L.C.**   **CIVIL ACTION NO.**

**VERSUS**

**19-781-BAJ-EWD**

**MANAGED MILLWORK, L.L.C., ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BLACK CREEK CONTRACTORS, L.L.C.**

**VERSUS**

**MANAGED MILLWORK, L.L.C., ET AL.**

**CIVIL ACTION NO.**

**19-781-BAJ-EWD**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Plaintiff's Brief in Support of Damages Award, filed by Black Creek Contractors, L.L.C. ("Plaintiff"), which the Court will treat as a Motion for Determination of Damages Award ("Motion").[1] Plaintiff seeks damages in the amount of $246,947.16, pursuant to the default judgment that was entered against Managed Millwork, LLC, and Edward Everett (collectively "Defendants").[2] Defendants did not file any response to the Motion and the time period to do so has expired.[3] An evidentiary hearing is not necessary. It is recommended[4] that the Motion be granted in part, and that Plaintiff be awarded contractual damages in the amount of $121,392.62, plus reasonable attorneys' fees in the amount of $46,467.00, and costs in the amount of $4,192.70, for a total award of $172,052.32, plus interest.

---

[1] R. Doc. 99.
[2] R. Doc. 97, p. 11.
[3] Under Local Civil Rule 7(f), any response to the Motion was due by no later than May 5, 2023.
[4] Plaintiff's Motion was referred. R. Doc. 100. Motions to determine damages are akin to a post-trial motion for attorney's fees. While the question of whether a post-trial motion for attorney's fees is dispositive does not appear to have been decided by the U.S. Court of Appeals for the Fifth Circuit, district courts considering the issue have held that such a motion is a dispositive matter upon which a magistrate judge should enter a report and recommendation. *See, e.g., Scott v. Kijakazi,* No. 15-404, 2021 WL 4129477, n. 4 (M.D. La. Aug. 25, 2021), report and recommendation adopted, 15-404, 4130180 (M.D. La. Sept. 9, 2021) (collecting cases).

I.     **BACKGROUND**

This is a commercial contract dispute. Plaintiff is a contractor that works on international construction projects.[5] Everett owns and operates Defendant Managed Millwork, a company that fabricates and ships countertops.[6] On or about June 5, 2018, Plaintiff and Managed Millwork executed a purchase order agreement ("Purchase Agreement") for Managed Millwork to fabricate and ship countertops for use on one of Plaintiff's construction projects.[7] The Purchase Agreement incorporated terms and conditions into the contract, including a requirement that Managed Millwork indemnify Plaintiff for any and all losses, including reasonable attorneys' fees, that Plaintiff may incur as a result of any breach by Managed Millwork.[8] Everett signed the Purchase Agreement on Managed Millwork's behalf.[9]

On July 26, 2018, pursuant to the Purchase Agreement, Plaintiff wired $31,470 to Managed Millwork as a down payment for the countertops.[10] That same day, Everett on behalf of Managed Millwork confirmed receipt of the funds and agreed to begin work on the countertops immediately.[11] Managed Millwork did not provide the countertops by the September 20, 2018 deadline. In fact, the countertops were never provided by Managed Millwork.[12] Because Managed Millwork failed to provide the countertops, Plaintiff was forced to identify and hire another supplier that could quickly produce and ship the countertops to prevent any further delays on the project.[13]

---

[5] R. Doc. 97, p. 2, citing R. Doc. 5, ¶10.
[6] R. Doc. 97, p. 2, citing R. Doc. 5, ¶12.
[7] R. Doc. 97, p. 2, citing R. Doc. 5, ¶13.
[8] R. Doc. 5-1, pp. 1, 4.
[9] R. Doc. 97, p. 2, citing R Doc. 5, ¶13.
[10] R. Doc. 5, ¶15 and R. Doc. 5-2.
[11] R. Doc. 97, p. 2, citing R. Doc. 1-3, p. 1.
[12] R. Doc. 5, ¶¶16-18.
[13] R. Doc. 5, ¶19.

2

Plaintiff filed this suit on November 13, 2019, asserting a cause of action for breach of contract and an alternative cause of action for unjust enrichment against Managed Millwork and Everett.[14]  A brief recitation of the procedural history following the filing of suit shows Defendants' steadfast refusal to cooperate and fulfill their obligations under the Federal Rules of Civil Procedure.  After Everett was served with the suit, he answered on his own behalf (proceeding *pro se*) on March 2, 2020.[15]  Notwithstanding Everett's appearance in the litigation, Plaintiff was unable to serve Managed Millwork until June 21, 2020, when a private process server was finally able to serve the company, by and through Everett, on the fourth attempt.[16]  On September 17, 2020, the eve of the deadline for the parties to file their joint status report, Everett assured Plaintiff's counsel that he had finally reached an agreement for legal representation with a New Orleans firm and said he would "forward final Details Asap," after months of representations that he was in the process of securing an attorney.[17]  When Managed Millwork still had not made an appearance by the end of January 2021, the Court ordered Defendants to appear and show cause why a default judgment should not be entered or sanctions awarded for their failure to comply with the Court's Order and/or failure to keep the Court apprised of their address.[18]  The Court issued an Order on February 12, 2021, after the show cause hearing, giving Managed Millwork thirty days to retain an attorney and file an answer or other responsive pleading.[19]

When Managed Millwork failed to comply with the Court's February 12th Order, Plaintiff filed a request for entry of default as to Managed Millwork on April 16, 2021.[20]  On April 19,

---

[14] R. Doc. 1. Plaintiff filed its First Amended Complaint on November 25, 2019.  R. Doc. 5.
[15] R. Docs. 12 and 15.
[16] R. Doc. 31.  Upon Black Creek's request, the Court granted it several extensions of time to perfect service on Managed Millwork due to difficulties effecting service, including without limitation mail being returned as "not deliverable to addressed, unable to forward."  *See* R. Docs. 9, 10, 11, 22, 23.
[17] R. Doc. 38-2, p. 2 and R. Doc. 47, n. 25 (collecting representations).
[18] R. Doc. 47, p. 4 and n. 25.
[19] R. Doc. 50.
[20] R. Doc. 53.

2021, the Clerk of Court granted Plaintiff's Motion.[21] A month later, Managed Millwork, through counsel, moved the Court to set aside the Clerk's Entry of Default.[22] After a full briefing on the matter, the Court granted Managed Millwork's motion to set aside the entry of default judgment on March 31, 2022.[23] Managed Millwork, through counsel, then answered the Plaintiff's initial and amended complaints.[24]

On July 30, 2022, Plaintiff propounded discovery requests to Defendants.[25] After Defendants failed to timely respond, Plaintiff conducted a meet-and-confer with Defendants' counsel regarding the outstanding responses.[26] Plaintiff then filed a motion requesting a court order compelling Defendants to respond to the discovery requests.[27] The Court held a telephone conference on October 6, 2022 to discuss Plaintiff's motion to compel. During the conference, in response to questions from the Court, defense counsel confirmed that he had exhausted all means of communication to reach his clients but received no response; counsel also confirmed that he had advised Defendants of the potential consequences of failure to participate in the discovery process.[28]

Considering these representations, the Court concluded that additional briefing was not necessary and ordered Defendants to respond to Plaintiff's discovery requests by no later than October 21, 2022.[29] The Court also advised Defendants that failure to respond to the requests by

---

[21] R. Doc. 54.
[22] R. Doc. 55.
[23] R. Doc. 65.
[24] R. Docs. 68 and 71.
[25] R. Doc. 78-2.
[26] R. Doc. 78-3.
[27] R. Doc. 78.
[28] R. Doc. 82, p. 1.
[29] R. Doc. 82, p. 3.

4

the Court ordered deadline could result in the imposition of Rule 37 sanctions against them, up to and including a default judgment rendered in Plaintiff's favor.[30]

On November 7, 2022, the Court held another telephone conference, where Everett appeared with his counsel.[31] The Court explained to Everett the gravity of Defendants' failure to participate in discovery and failure to comply with Court orders. At the conference, Plaintiff expressed its intention to seek sanctions based on Defendants' repeated failure to participate in discovery or comply with Court orders.[32] On November 11, 2022, Plaintiff filed a Motion for Rule 37 Sanctions, seeking an award of attorney's fees and the entry of a default judgment against Defendants.[33] Defendants did not file a response to the Motion for Sanctions and Defendants also did not respond to Plaintiff's discovery requests. On March 13, 2023, the undersigned granted Plaintiff's request for monetary sanctions against Defendants.[34] While Plaintiff's request for the entry of a default judgment was denied, it was recommended that the District Judge issue an order to show cause why Defendants' responsive pleadings should not be stricken, and appropriate sanctions imposed.[35]

On March 14, 2023, the District Judge issued an Order requiring Defendants to show cause why their responsive pleadings should not be stricken, the Clerk's Entry of Default should not be reinstated, and a default judgment against them should not be entered pursuant to Rule 37(b)(2), in light of their continuing failure to respond to Plaintiff's discovery requests, even in the face of

---

[30] *Id.*
[31] R. Doc. 86, p. 1.
[32] R. Doc. 86, p. 2.
[33] R. Doc. 85.
[34] R. Doc. 91. The Order also directed Plaintiff to file under seal unredacted copies of the invoices attached to its counsel's affidavit so the Court could determine the specific amount of reasonable expenses, including attorney's fees, to award. R. Doc. 91, p. 10. Plaintiff timely filed the unredacted invoices, as ordered. R. Doc. 93.
[35] R. Doc. 91, pp. 9-10.

5

multiple Court orders requiring them to respond.[36] The deadline to respond to the Court's show cause Order expired without a timely response from Defendants.

On March 23, 2023, Defendants' counsel filed an unopposed motion to withdraw as counsel of record.[37] On March 29, 2023, Plaintiff renewed and reurged its November 11, 2022 request for the entry of a default judgment against Defendants, indicating to the Court that Defendants' "complete failure or refusal" to participate in the litigation was causing it to incur significant attorney's fees and costs and hindering its efforts to prosecute the case.[38] On March 31, 2023, the Court ordered the entry of a default judgment in favor of Plaintiff and against Defendants.[39] The entry of the default judgment against Defendants established that they were liable to Plaintiff for breach of the Purchase Agreement. The Court also ordered Plaintiff to submit a brief setting forth the factual basis of all damages Plaintiff seeks from Defendant, accompanied by affidavits establishing the necessary facts to support an award of damages.[40]

On April 14, 2023, Plaintiff filed the Motion, seeking an award of damages in the amount of $246,947.16.[41]

**II.    LAW AND ANALYSIS**

### A. Legal Standard for Determining Damages in the Context of a Default Judgment

After a default judgment, the factual allegations of the complaint are taken as true, except regarding damages.[42] A default judgment must not exceed in amount what is demanded in the pleadings.[43] In the context of a default judgment, unliquidated damages can be awarded without

---

[36] R. Doc. 92.
[37] R. Doc. 94.
[38] R. Doc. 95.
[39] R. Doc. 97.
[40] R. Doc. 97, p. 11.
[41] R. Doc. 99.
[42] *Jackson v. FIE Corp.*, 302 F.3d 515, 525 n. 29 (5th Cir. 2002).
[43] Fed. R. Civ. Proc. 54(c).

6

an evidentiary hearing where the amount claimed is a liquidated sum or one capable of mathematical calculation.[44] Fed. R. Civ. Proc. 55(b) gives the judge wide latitude in determining whether a hearing will be beneficial.[45] The court may rely on detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum.[46] Here, because the amount Defendants owe Plaintiff is capable of mathematical calculation, no evidentiary hearing is needed to calculate the award.[47]

### B. Contractual Damages

As subject matter jurisdiction in this case is based on diversity jurisdiction under 28 U.S.C. 1332, Louisiana substantive law applies.[48] Under Louisiana law, the language in an indemnity agreement dictates the obligations of the parties.[49] The Fifth Circuit has recognized that an indemnity contract is the law between the parties and must be interpreted in accordance with its terms and conditions.[50] The terms, provisions, and conditions of a contract of indemnity will be enforced as written unless they run counter to law or violate well-defined public policy or good morals.[51] In determining whether an indemnitor is obligated to defend an indemnitee under the

---

[44] *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).
[45] *Id.*, at 311. FRCP 55(b)(2)(B) provides that the court *may* conduct hearings or make referrals when, to enter or effectuate a judgment, it needs to determine the amount of damages.
[46] *Richardson v. Salvation Army, Southern Territory, USA*, 161 F.3d 7 (5th Cir. 1998) (*per curiam*), citing *James*, 6 F.3d at 310.
[47] *See Developers Surety & Indemnity Co. v. Cercontec, L.L.C.*, No. 18-1379, 2020 WL 1271603, at *4 (W.D. La. March 13, 2020).
[48] *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. North Am., Inc*., 951 F.3d 219, 225 (5th Cir. 2020), citing *Meador v. Apple, Inc*., 91 F.3d 260, 264 (5th Cir. 2018). The Purchase Agreement also provides that "[t]his Agreement shall be governed and interpreted in accordance with the laws of the State of Louisiana, without reference to any conflicts of law principles." R. Doc. 5-1, p. 4.
[49] *Bollinger Marine Fabricators, LLC v. Marine Travelift, Inc*., No. 14-1743, 2015 WL 13048734, at *4 (E.D. La. April 13, 2015), quoting *Kinsinger v. Taco Tico, Inc*., 861 So.2d 669, 671 (La.App. 5 Cir. 11/12/03) (citation omitted).
[50] *American Contractors Indem. Co. v. R.E. Jenkins, Inc*., No. 14-504, 2015 WL 2184293, at *4 (M.D. La. May 8, 2015), citing *Abbott v. Equity Group, Inc*., 2 F.3d 613, 627 (5th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994) (citation omitted).
[51] *American Contractors*, 2015 WL 2184293, at *4, citing *Fidelity & Deposit Co. of Maryland v. Thieme*, 193 So. 496, 497 (La.App. 2 Cir. 1940).

7

terms of an indemnity contract, the Louisiana courts look exclusively to the pleadings in light of the contract provisions.[52]

Here, by executing the Purchase Agreement, Managed Millwork agreed to the following indemnity provision that was incorporated into the agreement:

> 12. **INDEMNIFICATION** – (a) Seller agrees to indemnify and hold Buyer harmless from and against any and all liabilities, costs, losses or expenses, including reasonable attorneys' fees, incurred Or suffered by Buyer as a result of or in connection with Seller's breach of any of its obligations hereunder.[53]

The Purchase Agreement was signed by Everett.[54]

In its Complaint, Plaintiff alleged that it suffered damages in an amount to be proven, exceeding $75,000, as a result of Defendants' breach of the Purchase Agreement.[55] Louisiana Civil Code article 1994 provides that an obligor is liable for damages caused by his failure to perform which results from nonperformance, defective performance, or delay in performance.[56] Damages for failure to perform are measured by the loss sustained by the obligee and the profit of which he has been deprived.[57] Since the Purchase Agreement contains no expression of the parties' intent to limit Defendants' liability for failure to perform, damages can be awarded as provided by the Louisiana Civil Code—allowing for the recovery of both the loss sustained and the profit of which Plaintiff was deprived.[58]

As proof of the expenses Plaintiff incurred as a result of Defendants' breach of the Purchase Agreement, Plaintiff claims entitlement to the following amounts: $31,470.00 paid to Managed

---

[52] *Sullen v. Missouri Pacific R. Co.*, 750 F.2d 428, 433 (5th Cir. 1985).
[53] R. Doc. 5-1, p. 4.
[54] R. Doc. 5-1, p. 1.
[55] R. Doc. 5, ¶28.
[56] *Odyssea Vessels, Inc. v. A & B Industries of Morgan City, Inc.*, 2011-2009 (La.App. 1 Cir. 6/13/12), 94 So.3d 182, 191, citing La. Civ Code art. 1994.
[57] *Odyssea*, 94 So.3d at 191.
[58] *See, e.g., Odyssea*, 94 So.3d at 191.

8

Millwork as a down payment for the countertops that were never delivered;[59] $624.21 and $1,545.88 for sums incurred when Plaintiff was forced to engage the services of two consultants to obtain help finding replacement vendors for the construction and supply of the countertops;[60] $8,850.00 and $44,295.00 to pay two new vendors to construct suitable replacement countertops;[61] $10,532.80 and $1,320.66 to send two staff members to meet with the replacement vendors and observe their respective facilities in order to confirm a breach similar to Defendants' would not occur at the new vendors' facilities;[62] $2,767.32 and $13,966.75 express air freight to ensure the replacement countertops arrived at the construction project as quickly as possible due to the tightened schedule caused by Defendants' breach;[63] and $6,020.00 for costs to engage an engineering consultant to oversee issues caused by the missing countertops and resulting.[64]

The amounts sought are supported by the record, which contains detailed invoices, copies of checks, and other proof of payment for the costs claimed by Plaintiff. These amounts are further corroborated by the Affidavit of Black Creek's Chief Executive Officer, John J. Moore, which explains how these losses were incurred because of, or in connection with, Defendants' breach.[65] Accordingly, Plaintiff is entitled to judgment in the amount of $121,392.62, which is the total of the contractual damages sustained due to Defendants' failure to perform their obligations under the Purchase Agreement.

---

[59] *See* R. Doc. 99, p. 5. *See also* R. Doc. 99-4, ¶11 and pp. 11-12.
[60] *See* R. Doc. 99, pp. 5-6. *See also* R. Doc. 99-4, ¶14 and pp. 48-51.
[61] *See* R. Doc. 99, p. 5. *See also* R. Doc. 99-4, ¶15 and pp. 13-26.
[62] See R. Doc. 99, p. 5. *See also* R. Doc. 99-4, ¶16 and pp. 52-55.
[63] See R. Doc. 99, p. 6. *See also* R. Doc. 99-4, ¶17 and pp. 28-41.
[64] *See* R. Doc. 99, p. 6. *See also* R. Doc. 99-4, ¶18 and pp. 42-47.
[65] R. Doc. 99-4.

### C. Attorneys' Fees

Plaintiff's Complaint also sought to recover the reasonable attorneys' fees it incurred as a result of Defendants' breach of their obligations under the Purchase Agreement, which is allowed under the terms of the Purchase Agreement.[66]

#### 1. Legal Standard

A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case.[67] State law controls both the award, and the reasonableness, of attorneys' fees where state law supplies the rule of decision.[68] Because this Court is sitting in diversity, and Plaintiff's right to attorneys' fees is set forth by contract, Louisiana law governs the fee claim.[69]

Under Louisiana law, courts may exercise their inherent power to regulate the practice of law to inquire as to the reasonableness of attorneys' fees.[70] In determining reasonableness, a court may consider (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) the attorneys' legal knowledge, attainment, and skill; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.[71] These guidelines are permissive and consideration of all the factors is not necessary.[72] These factors derive from Rule 1.5(a) of the Rules of Professional Conduct.[73]

---

[66] R. Doc. 5, ¶¶ 39-40. The Court is not rendering the award of reasonable expenses, including attorney's fees, pursuant to the Court's March 13, 2023 Ruling and Order and Recommendation on Plaintiff's Motion for Rule 37 Sanctions because that award would only constitute a portion of what Plaintiff is entitled to for reasonable attorney's fees and costs in this case. *See* R. Doc. 91, pp. 9-10, and R. Doc. 85
[67] *Chalos & Co., P.C. v. Marine Managers, Ltd.*, No. 14-2441, 2016 WL 9414335, at *2 (E.D. La. April 5, 2016), citing *Mathis v. Exxon Corp.* 302 F.3d 448, 461 (5th Cir. 2002) (citation omitted).
[68] *Chalos*, 2016 WL 9414335, at *2, citing *Mathis*, 302 F.3d at 461.
[69] *See Chalos*, 2016 WL 9414335, at *2.
[70] *Id.*, citing *State, Dep't of Transp. and Development v. Williamson*, 597 So.2d 439, 441-42 (La. 1992).
[71] *Chalos*, 2016 WL 9414335, at *2, citing *Williamson*, 597 So.2d at 442 (citations omitted).
[72] *Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988).
[73] *Chalos*, 2016 WL 9414335, at *2, citing *Williamson*, 597 So.2d at 442, n. 9.

Another pertinent factor listed in Rule 1.5(a) is "the fee customarily charged in the locality for similar legal services."[74]

The court should also evaluate attorneys' fees for "billing judgment."[75] Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours. Plaintiffs submitting fee requests are required to exercise billing judgment."[76] An accepted method with which to begin a calculation of a fee award under Louisiana law is to multiply the number of hours worked by an hourly rate the court deems reasonable.[77]

### 2. Plaintiff's Incurred Fees and Costs

The law firm of Kilpatrick Townsend & Stockton LLP ("the Kilpatrick Firm") began to represent Plaintiff in connection with this case on September 18, 2019. According to the Affidavit of Attorney Raymond T. Fischer, Plaintiff has agreed to pay and has paid the Kilpatrick Firm its reasonable and necessary attorneys' fees and expenses incurred in connection with its legal representation in this matter.[78] Plaintiff now seeks to recover the $125,554.54 in legal fees and costs.[79] According to the firm's invoices, $121,361.84 is sought for legal fees and $4,192.70 for costs.[80]

### 3. Hourly Rate

The attorneys representing Plaintiff in this matter are based in Dallas, Texas and Atlanta, Georgia. Partner Gunjan R. Talati billed from $615 an hour in 2019 up to $750 an hour in 2023.

---

[74] *Id.*
[75] *Id.*, citing *Walker v. U.S. Dep't of Housing and Urban Development*, 99 F.3d 761, 769 (5th Cir. 1996) and *Covington v. McNeese State University*, 118 So.3d 343, 357 (La. 2013).
[76] *Hamdan v. Tiger Brothers Food Mart Inc.*, No. 15-412, 2018 WL 3029991, at *13 (M.D. La. May 22, 2018), citing *Walker,* 99 F.3d at 769 (citation omitted).
[77] *Chalos*, 2016 WL 9414335, at *2, citing *Fourchon Docks*, 849 F.2d at 1568.
[78] R. Doc. 99-5, ¶ 5. The Attorney Affidavit represents that the Kilpatrick Firm had not yet submitted its March and April 2023 invoices to Plaintiff at the time this Motion was filed.
[79] *See* R. Doc. 99, p. 6. *See also* R. Doc. 99-4, ¶19.
[80] R. Doc. 102, pp. 1-99 (filed under seal).

11

Talati has practiced law for 18 years. Counsel Raymond T. Fischer billed from $550 an hour in 2019 to $795 an hour in 2023. Fischer has practiced law for 20 years. Associate Whitney Judson billed from $375 an hour in 2019 to $605 an hour in 2020. Judson has practiced law for approximately nine years. Associate Emilia Eye billed for $350 an hour in 2020. Eye has practiced law for approximately seven years. Associate Camille D. Griffith billed for $505 an hour in 2020. Griffith has practiced law for approximately eight years. Associate John Robinson billed from $400 an hour in 2022 to $500 an hour in 2023. Robinson has practiced law for approximately five years. Associate Zoe Stendara billed for $460 an hour in 2023. Stendra has practiced law for approximately three years. Paralegal Shannon Van Vickle billed for $295 an hour in 2019. Paralegal Brooke Floyd billed for $295 an hour from 2019 to $395 an hour in 2023.[81]

While the fees the Kilpatrick Firm charged the Plaintiff may be customary in major metropolitan areas like Dallas and Atlanta, they are not reasonable in the Middle District of Louisiana. To constitute a reasonable fee under Louisiana law, the fee must be a sum that is customarily charged in the locality for similar legal services.[82] Plaintiff only relies on the affidavit testimony of one of its Dallas-based attorneys to contend that the firm's fees are reasonable and customary in the Middle District.[83] A conclusory affidavit that a given fee is reasonable is not satisfactory evidence of market rates.[84]

This Court has previously found that hourly rates ranging from $165 to $375 are reasonable, based on the experience of the attorney involved.[85] Recent decisions from the U.S. District Court for the Eastern District of Louisiana have found that hourly rates ranging from $300

---

[81] R. Doc. 99-5, ¶¶ 6-7
[82] *Chalos*, 2016 WL 9414335, at *2, citing *Williamson*, 597 So.2d at 442.
[83] R. Doc. 99-5, ¶ 8.
[84] *Hubert v. Curren*, No. 18-7669, 2018 WL 4963595, n. 21 (E.D. La. Oct. 15, 2018), quoting *Alfasigma USA, Inc. v. EBM Med., LLC*, No. 17-7753, 2018 WL3869496, *3 (E.D. La. Aug. 15, 2018) (citation omitted).
[85] *Hamdan*, 15-412, 2018 WL 3029991, at *13 (addressing attorney's fee claim for counsel with 30, 18 and 4 years of experience in intellectual property).

to $350 are reasonable.[86] Because the hourly fees charged by the Kilpatrick Firm are excessive for this market, the attorneys' and paralegals' hourly rates are reduced as follows: Partner Gunjan R. Talati and Counsel Raymond T. Fischer to $375 an hour; Associates Whitney T. Judson, Emilia Eye, Camille D. Griffith, John D. Robinson, and Zoe P. Stendara to $250 an hour;[87] Paralegals Shannon Van Vickle and Brooke Floyd to $100 an hour.[88]

### 4. Hours Reasonably Expended

The Kirkpatrick Firm's itemized invoices reveal that the firm billed for 204.8 hours of work.[89] The reasonableness of the hours expended in this matter must be viewed in light of the fact that this relatively straightforward breach of contract action required additional time and resources to prosecute because Defendants delayed appearance and refused to cooperate and participate in the litigation as the Federal Rules of Civil Procedure require, as indicated by the lengthy procedural history recounted, above.[90]

The invoices before the Court are sufficiently detailed to allow for a meaningful review. The invoices also reveal that the Kilpatrick Firm has already written off some of its charges.[91] However, the invoices still show some redundancy in instances where more than one attorney billed for the same activity.[92] There are also some instances where more than one attorney billed

---

[86] *Badon v. Berry's Reliable Resources, LLC*, No. 19-12317, 2022 WL 18671139, *3 (E.D. La. Nov. 17, 2022); *Gorham v. Kaufman*, 22-08, 2022 WL 18359381, at *3 (E.D. La. Dec. 26, 2022); *M C Bank and Trust Company v. Suard Barge Service, Inc*., No. 16-14311, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017); *Hubert*, 2018 WL 4963595, at *4.
[87] *See, e.g., Chalos*, 2016 WL 9414335, at *3, (awarding an hourly rate of $225 to associates who worked on a case similar to the present one).
[88] *See, e.g., Gann v. Colvin*, No. 14-189, 2017 WL 385038, at *3 (M.D. La. Jan. 27, 2017) (awarding an hourly rate of $75 for a paralegal's time in a social security appeal).
[89] R. Doc. 102, pp. 1-99 (filed under seal). While Plaintiff claims it was billed for 210.7 hours of work, the Court's calculations indicate that the firm only billed for 204.8 hours.
[90] *See also,* R. Doc. 97, pp. 4-8.
[91] *See, e.g*., R. Doc. 102, pp. 20-22, 25-27, 30-31, and 76 (filed under seal).
[92] *See, e.g.*, R. Doc. 102, pp. 17, 20, 21, 22, 46, 59, 62, 77, 80, and 86.

for attending the same Court conference or worked on the same small project.[93] To account for these redundancies, a ten percent reduction of the remaining fee award is appropriate.[94]

### 5. Summary

As to the other factors that govern the reasonableness of a fee award, Plaintiff's counsel successfully obtained a judgment in favor of its client and acted diligently to represent its client's interests in this matter. A proposition made more costly by Defendants' repeated failures to cooperate in the litigation process. Thus, no further adjustment of the attorney's fees is necessary. After the hourly rates are adjusted to the reasonable hourly rates determined above, and the fee award is discounted an additional ten percent for billing redundancies, Plaintiff is entitled to reasonable attorneys' fees in the amount of $46,467.00.[95]

### D. Costs

In addition to its fee award, Plaintiff also seeks an award of $4,192.70 for costs incurred by the Kilpatrick Firm, including legal research fees, shipping costs, and private process server expenses.[96] Plaintiff claims that these expenses were reasonable and necessary and incurred in connection with its legal representation in this matter.[97] The applicable law provides that costs other than attorneys'fees shall be allowed as a matter of course to the prevailing party unless the

---

[93] *See, e.g.*, R. Doc. 102, pp. 49, 50, 67, and 85-86.
[94] *See, e.g., Chalos*, 2016 WL 9414335, at *5 (imposing a thirty percent decrease in the overall fee award because the law firm used "block billing", the invoices contained redundant entries, and the invoices contained entries lacking any meaningful description of counsel's work; *see also, Hamdan*, 2018 WL 3029991, at *13 (finding that the proper remedy for omitting evidence of billing judgment is not a denial of fees, but rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment) (citation omitted).
[95] This total was obtained by multiplying $375 by 95.6 hours of work performed by Talati and Fischer; multiplying $250 by 32.4 hours of work performed by the associates; and multiplying $100 by 76.8 hours of work performed by the paralegals, for a total of $51,630.00, that was then reduced by 10%, for a final total fee award of $46,467.00.
[96] *See* R. Doc. 102, pp. 7, 14, 23, 27, 32, 35, 38, 41, 44, 60, 65, and 98 (filed under seal).
[97] R. Doc. 99-5, ¶5.

14

court otherwise directs.[98] Costs in the sum of $4,192.70 were reasonable and necessary and should be awarded.[99]

### E. Interest

Plaintiff claims it is also entitled to pre- and post-judgment interest.[100] Pre-judgment interest is governed by state law in diversity cases,[101] and is meant to fully compensate the injured party for the use of funds to which he is entitled but does not enjoy because the defendant has maintained control over the funds during the pendency of the action.[102] As Plaintiff's cause of action arises out of violations of the Purchase Agreement, interest is calculated from the date the obligation was due.[103] Defendants' obligation to Plaintiff under the Purchase Agreement was due September 20, 2018.[104] The Purchase Agreement does not provide a rate for pre-judgment interest; however, La. R.S. § 9:3500(B) provides that legal interest is fixed at the rate under La. R.S. § 13:4202 on all sums which are the object of a judicial demand. La. R.S. § 13:4202(B)(2) states that the judicial interest rate will be published annually in certain publications.[105]

Federal law controls the award of post-judgment interest.[106] Title 28 U.S.C. §1961(a) provides that interest shall be allowed on any money judgment in a civil case recovered in a district court and shall be calculated from the date of the entry of the judgment. Thus, Plaintiff is entitled

---

[98] *Badon.* 2022 WL 18671139, at *7, citing Fed. R. Civ. Proc. 54(d).
[99] *See, e.g., Badon,* 2022 WL 18671139, at *7.
[100] R. Doc. 99, p. 8.
[101] *Travelers Insurance Company v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1208 (5th Cir. 1993).
[102] *IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District*, No.16-146, 2022 WL 780926, at *3 (W.D. La. Mar. 14, 2022), citing *Sharbono v. Steve Lang & Son Loggers*, 97-0110 (La. July 1, 1997), 696 So.2d 1382, 1386.
[103] *Developers*, 2020 WL 1271603, at *6, citing La. Civ. Code art. 2000.
[104] See R. Doc. 5, ¶15. *See also IFG Port Holdings*, 2022 WL 780926, at *4 (finding that prejudgment interest in a case involving contractual damages should be calculated from the date of loss and not the date of judicial demand because the underlying award of damages stemmed from the defendant's breach of its contractual obligation).
[105] Using the interest calculator provided by the Louisiana State Bar Association, Plaintiff would be entitled to pre-judgment interest on the contractual damage award of $121,392.62 from September 20, 2018 until the date of judgment. Through the date of this Report and Recommendation, the amount of pre-judgment interest would be $34,226.90. https://www.lsba.org/Members/JudicialInterestRate.aspx (last visited 3/4/2024).
[106] *Developers*, 2020 WL 1271603, at *6 (citations omitted).

to receive post-judgment interest from the date of entry of the judgment in this case, at the rate established by 28 U.S.C. §1961(a).[107]

### III.  RECOMMENDATION

Plaintiff obtained a default judgment against Defendants and has provided evidence of the amounts owed for contractual damages, attorney's fees, and costs.  After review of this evidence, **IT IS RECOMMENDED** that the Motion for the Determination of the Damages Award, filed by Plaintiff Black Creek Contractors, L.L.C., be **GRANTED IN PART**, and that Plaintiff be awarded $121,392.62 in contractual damages, with pre-judgment interest on the award of $121,392.62 from September 20, 2018 until the date of the entry of the judgment, at the rate established by La. R.S. § 13:4202; as well as reasonable attorneys' fees in the amount of $46,467.00; costs in the amount of $4,192.70; and post-judgment interest from the date the judgment is entered until the date the judgment is paid, at the rate established by 28 U.S.C. §1961(a).

Signed in Baton Rouge, Louisiana, on March 4, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[107] According to that provision, post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges." … (b) Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title and section 1304(b) of title 31, and shall be compounded annually."  The post-judgment interest rate for the week ending 2/23/2024 was 4.99%. https://www.txed.uscourts.gov/?q=post-judgment-interest-rates (last visited 3/4/24).